**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
--------------------------------------------------------X
HERIBERTO GARRIGA and ABELINO H.
RAMIREZ, individually and on behalf of all
other persons similarly situated,

                            Plaintiffs,

            - against -

BLONDER BUILDERS INC. and
MITCHELL BLONDER,

                            Defendants.
--------------------------------------------------------X

**MEMORANDUM**
**AND ORDER**

CV 17-497 (JMA) (AKT)

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

I.      PRELIMINARY STATEMENT

            Plaintiffs Heriberto Garriga and Abelino Ramirez (collectively, "Plaintiffs") commenced

this putative collective and class action against Defendants Blonder Builders Inc. and Mitchell

Blonder (collectively, "Defendants") for violations of the Fair Labor Standards Act ("FLSA"),

29 U.S.C. §§ 201 *et seq.*, the New York Labor Law ("NYLL"), Article 6 §§ 191 and Article 19

§§ 650 *et seq.*, and the New York Codes, Rules, and Regulations ("NYCRR") tit. 12 §§ 142 *et*

*seq. See generally* Amended Complaint ("Am. Compl.") [DE 16].  Plaintiffs seek to recover for

Defendants' alleged failure to pay overtime and regular wages, as well as for other violations of

applicable law.  *See id.*  Plaintiffs now move for conditional certification of this action as a

collective action and court-authorized notice pursuant to § 216(b) of the FLSA.  For the reasons

set forth below, Plaintiffs' motion is GRANTED, in part, and DENIED, in part.

II.      BACKGROUND

      A.      **Factual Background**

            The following facts asserted by Plaintiffs are taken from the operative pleading -- the

Amended Complaint -- which was filed on June 23, 2017.  Defendants are in the construction

business.  Am. Compl. ¶ 18.  Plaintiff Abelino H. Ramirez was employed by Defendants as a carpenter from approximately August 2016 until November 17, 2016, and Plaintiff Heriberto Garriga was employed by Defendants as a carpenter from approximately March 2017 until April 19, 2017.  *Id.* ¶¶ 23-25.  Plaintiffs claim that they worked for Defendants between 48 and 55 hours per week throughout their respective periods of employment.  *Id.* ¶ 26.  Defendants paid Plaintiff Ramirez approximately $22.00 per hour, but failed to pay him for time worked on his final two workdays, during which time Ramirez worked approximately 17 hours.  *Id.* ¶ 27.  Defendants paid Plaintiff Garriga approximately $25.00 per hour at all relevant times.  *Id.* ¶ 28.  Both Plaintiffs were paid partially by check and partially in cash.  *Id.* ¶ 29.

Plaintiffs allege that they and their coworkers each worked more than 40 hours per week, yet Defendants failed to pay them overtime wages.  Am. Compl. ¶ 30.  According to the Amended Complaint, Plaintiff Garriga would discuss Defendants' failure to pay overtime wages with his co-workers during lunchtime each week and on Fridays when he was paid.  *Id*. ¶ 31.  Garriga had these discussion with employees named Enrique, Josue, and Joel.  *Id*.  Each payday, these employees would facetiously ask each other "[h]ey, did they finally pay you overtime?" knowing that Defendants maintained a policy of not paying overtime.  *Id*.

The Amended Complaint also asserts that Defendants failed to provide Plaintiffs with written wage and hour notices that included the rate of pay, any deductions from pay, and other information required under the NYLL.  Am. Compl. ¶ 32.  Likewise, Defendants failed to provide Plaintiffs with a proper statement of wages as required by the NYLL.   According to Plaintiffs, the statements they were provided did not accurately state the number of hours they actually worked each week.  *Id*. ¶ 33.

**B.      Relevant Procedural Background**

Plaintiffs commenced this action against Defendants on January 29, 2017.  *See* DE 1.  On

June 23, 2017, Plaintiffs filed an Amended Complaint, *see* DE 16, in response to which

Defendants filed an Answer on July 19, 2017.  *See* DE 24.  On September 5, 2017, Plaintiffs

filed a letter requesting a pre-motion conference before Judge Azrack for purposes of moving for

conditional certification.  *See* DE 27.  Defendants opposed the application.  *See* DE 28.  Judge

Azrack in turn referred Plaintiffs' request for a pre-motion conference and any resulting motion

to this Court.[1]  *See* Electronic Order of September 7, 2017.  Finding a pre-motion conference

unnecessary, this Court directed counsel to submit a joint briefing schedule for Plaintiffs'

intended motion for conditional certification.  *See* Electronic Order of September 8, 2017.  The

briefing schedule was submitted by counsel and "so ordered" by the Court.  *See* DE 29, 30.

Plaintiffs' fully-briefed motion was filed on November 22, 2017.  *See* DE 35-40.

**III.   <u>APPLICABLE LAW</u>**

**A.      Legal Standard on a Motion for Conditional Certification**

The FLSA provides, in pertinent part, as follows:

> Any employer who violates the provisions of section 206 or section
> 207 of this title shall be liable to the employee or employees affected
> in the amount of their unpaid minimum wages, or their unpaid
> overtime compensation, as the case may be, and in an additional
> equal amount as liquidated damages. . . . An action to recover . . .
> may be maintained against any employer (including a public
> agency) in any Federal or State court of competent jurisdiction by
> any one or more employees for and in behalf of himself or
> themselves and other employees similarly situated.  No employee

---

[1]      Although Judge Azrack "referred" the motion, this Court has the authority to grant or
deny conditional certification in the first instance "because such a determination is a non-
dispositive matter."  *Bijoux v. Amerigroup New York, LLC*, No. 14-CV-3891, 2015 WL 5444944,
at *1 (E.D.N.Y. Sept. 15, 2015) (quoting *McEarchen v. Urban Outfitters, Inc.*, No. 13-CV-
03569, 2014 WL 4701164, at *1 n.1 (E.D.N.Y. Sept. 23, 2014)).

> shall be a party plaintiff to any such action unless he gives his
> consent in writing to become such a party and such consent is filed
> in the court in which such action is brought.

29 U.S.C. § 216(b).  Section 216(b) provides an employee with a private right of action to

recover overtime compensation and/or minimum wages.  *Id.*; *Cabrera v. Stephens*, No. 16-CV-

3234, 2017 WL 4326511, at *4 (E.D.N.Y. Sept. 28, 2017) (citing *Bifulco v. Mortg. Zone*, *Inc.*,

262 F.R.D. 209, 212 (E.D.N.Y. 2009)) ("The FLSA provides a private right of action to recover

unpaid overtime compensation and/or minimum wages."); *Moore v. Eagle Sanitation, Inc.*, 276

F.R.D. 54, 57 (E.D.N.Y. 2011) (citing 29 U.S.C. § 216(b)); *Gjurovich v. Emmanuel's*

*Marketplace, Inc.*, 282 F. Supp. 2d 101, 103 (S.D.N.Y. 2003) (quoting *Hoffmann v. Sbarro, Inc.*,

982 F. Supp. 249, 260 (S.D.N.Y. 1997)).  "Although the FLSA does not contain a class

certification requirement, such orders are often referred to in terms of 'certifying a class.'"

*Bifulco*, 262 F.R.D. at 212 (quoting *Parks v. Dick's Sporting Goods, Inc.*, No. 05 Civ. 6590, 2007

WL 913927, at *3 (W.D.N.Y. Mar. 23, 2007)).

Courts within the Second Circuit apply a two-step analysis to determine whether an

action should be certified as an FLSA collective action.  *See Myers v. Hertz Corp.*, 624 F.3d 537,

544-45 (2d Cir. 2010) (noting that district courts within this Circuit have "coalesced around a

two-step method" for analyzing collective action certification); *see also Keawsri v. Ramen-Ya*

*Inc.*, No. 17-CV-2406, 2018 WL 279756, at *5 (S.D.N.Y. Jan. 2, 2018) (citing *Myers*, 624 F.3d

544-45); *Bijoux v. Amerigroup New York, LLC*, No. 14-CV-3891, 2015 WL 4505835, at *2

(E.D.N.Y. July 23, 2015) (citing the same), *report and recommendation adopted* by 2015 WL

5444944 (E.D.N.Y. Sept. 15, 2015).  First, the court determines whether the proposed collective

members are "similarly situated."  *Puglisi v. TD Bank, N.A.*, 998 F. Supp. 2d 95, 99 (E.D.N.Y.

2014) (quoting *Kalloo v. Unlimited Mech. Co. of NY, Inc.*, 908 F. Supp. 2d 344, 346 (E.D.N.Y.

2012)); *McGlone v. Contract Callers, Inc.*, 867 F. Supp. 2d 438, 442 (S.D.N.Y. 2012) (quoting *Myers*, 624 F.3d at 555). If the court decides in the affirmative, then the proposed collective members must consent in writing to be bound by the result of the suit, or "opt-in." *McGlone,* 867 F. Supp. 2d at 442 (citing *Cunningham v. Elec. Data Sys. Corp*, 754 F. Supp. 2d 638, 644 (S.D.N.Y. 2010)); *see* 29 U.S.C. § 216(b). The second step, which typically occurs after the completion of discovery, requires the court to make factual findings whether the class members are actually similarly situated. *Rosario v. Valentine Ave. Discount Store, Co.*, 828 F. Supp. 2d 508, 514 (E.D.N.Y. 2011) (quoting *Lynch v. United Servs. Auto. Ass'n*, 491 F. Supp. 2d 357, 368 (S.D.N.Y. 2007)). "At that juncture, the court examines the evidentiary record to determine whether the 'opt-in' plaintiffs are, in fact, similarly situated to the named plaintiff." *Bifulco*, 262 F.R.D. at 212 (quoting *Hens v. ClientLogic Operating Corp*., No. 05-381S, 2006 WL 2795620, at *4 (W.D.N.Y. Sept. 26, 2006)).

The instant motion concerns only the first step -- whether the proposed opt-in members are "similarly situated" such that conditional certification should be granted. At this stage, "the evidentiary standard is lenient," *Bifulco*, 262 F.R.D. at 212 (quoting *Rubery v. Buth-Na-Bodhaige, Inc*., 569 F. Supp. 2d 334, 336 (W.D.N.Y. Aug. 8, 2008)), and plaintiffs need only "make a 'modest factual showing' that they and potential opt-in plaintiffs 'together were victims of a common policy or plan that violated the law.'" *Myers*, 624 F.3d at 555 (quoting *Hoffmann*, 982 F. Supp. at 261); *see, e.g.*, *Perez v. Allstate Ins. Co*., No. 11-CV-1812, 2014 WL 4635745, at *5 (E.D.N.Y. Sept. 16, 2014); *Trinidad v. Pret A Manger (USA) Ltd.*, 962 F. Supp. 2d 545, 552 (S.D.N.Y. 2013); *Cano v. Four M Food Corp*., No. 08-CV-3005, 2009 WL 5710143, at *3 (E.D.N.Y. Feb 3, 2009); *Doucoure v. Matlyn Food, Inc.*, 554 F. Supp. 2d 369, 372 (E.D.N.Y. 2008). "In making this showing, 'nothing more than substantial allegations that the putative

class members were together the victims of a single decision, policy or plan' is required." *Sexton v. Franklin First Fin., Ltd.*, No. 08-CV-4950, 2009 WL 1706535, at *3 (E.D.N.Y. June 16, 2009) (quoting *Scholtisek v. Eldre Corp.*, 229 F.R.D. 381, 387 (W.D.N.Y. 2005)).  Moreover, courts have repeatedly stated that Section 216(b)'s "similarly situated" requirement is "considerably less stringent" than the requirements for class certification under Federal Rule of Civil Procedure 23, and "that a party seeking to maintain a collective action need not meet the requirements of Rule 23 for class certification." *Rodolico v. Unisys Corp.*, 199 F.R.D. 468, 481 (E.D.N.Y. 2001) (collecting cases); *see Dilonez v. Fox Linen Serv., Inc.*, 35 F. Supp. 3d 247, 252 (E.D.N.Y. 2014) (citing *Puglisi*, 998 F. Supp. 2d at 98–99, at *2; Fed. R. Civ. P. 23) (stating that a collective action under the FLSA "is different than a typical class action under the Federal Rules of Civil Procedure, the strict requirements of which – numerosity, commonality, typicality, and adequate representation – do not apply to a collective action").

At the initial certification stage, courts do not require proof of an actual FLSA violation but rather require the existence of a "'factual nexus' [ ] between the plaintiff's situation and the situation of other potential plaintiffs." *Sobczak v. AWL Indus., Inc.*, 540 F. Supp. 2d 354, 362 (E.D.N.Y. 2007) (quoting *Wraga v. Marble Lite, Inc.*, No. 05-CV-5038, 2006 WL 2443554, at *1 (E.D.N.Y. Aug. 22, 2006)); *see Fa Ting Wang v. Empire State Auto Corp.*, No. 14-CV-1491, 2015 WL 4603117, at *6 (E.D.N.Y. 2015); *see also Calderon v. King Umberto, Inc.*, 892 F. Supp. 2d 456, 459 (E.D.N.Y. 2012) (citing *Jackson v. N.Y. Telephone Co.*, 163 F.R.D. 429, 431 (S.D.N.Y. 1995)).  This determination is typically based on the pleadings, affidavits, and declarations submitted by the plaintiff or plaintiffs.  *See generally Fa Ting Wang*, 2015 WL 4603117, at *5-6 (citing *Kalloo v. Unlimited Mech. Co. of N.Y., Inc.*, 908 F. Supp. 2d 344, 346 (E.D.N.Y. 2012), *Brabham v. Mega Tempering & Glass Corp.*, No. 13 Civ. 54, 2013 WL

3357722, at *3 (E.D.N.Y. July 3, 2013)); *see also Robles v. Liberty Rest. Supply Corp.*, No. 12-CV-5021, 2013 WL 6684954, at *5 (E.D.N.Y. Dec. 18, 2013) (citing the same).

"Although plaintiff's 'burden of proof is low, it is not non-existent — certification is not automatic.'" *Elamrani v. Henry Limousine, Ltd.*, No. CV 15-2050, 2016 WL 5477590, at *4 (E.D.N.Y. Sept. 28, 2016) (quoting *Sanchez v. JMP Ventures, L.L.C.*, 2014 WL 465542, at *1 (S.D.N.Y. 2014)).  As the Second Circuit has explained, "[t]he 'modest factual showing' cannot be satisfied simply by 'unsupported assertions.'" *Myers*, 624 F.3d at 555 (quoting *Dybach v. State of Fla. Dep't of Corrections*, 942 F.2d 1562, 1567 (11th Cir. 1991)); *see Morales v. Plantworks, Inc.*, No. 05-CV-2349, 2006 WL 278154, at *3 (S.D.N.Y. Feb. 2, 2006) (quoting Charles Alan Wright, Arthur R. Miller, and Mary Kay Kane, 7B Federal Practice and Procedure: Civil 3d § 1807, at 487-53 (2005)) (stating that "conclusory allegations are not enough" to meet the "modest factual showing" at the first stage of collective action certification).

The standard of proof, however, should still remain "low . . . because the purpose of this first stage is merely to determine *whether* 'similarly situated' plaintiffs do in fact exist." *Myers*, 624 F.3d at 555 (citing *Hoffman*, 982 F. Supp. at 261) (emphasis in original); *see Trinidad*, 962 F. Supp. 2d at 553 (quoting the same).  With this in mind, courts have found that the allegations in the pleadings and the "personal observations of one plaintiff's affidavit" are "sufficient to make the modest factual showing necessary to conditionally certify [a] class." *Hernandez v. NGM Mgmt. Grp. LLC*, No. 12-CV-7795, 2013 WL 5303766, at *3 (S.D.N.Y. Sept. 20, 2013) (collecting cases); *see Ella Shillingford v. Astra Home Care, Inc. d/b/a True Care Home Healthcare*, No. 16 CIV. 6785, 2018 WL 1033243, at *3 (S.D.N.Y. Feb. 23, 2018) (citing *Escobar v. Motorino E. Vill. Inc.*, No. 14 Civ. 6760, 2015 WL 4726871, at *2 (S.D.N.Y. Aug. 10, 2015)) ("Accordingly, an FLSA collective action may be conditionally certified upon even a

single plaintiff's affidavit."); *see also Cabrera v. Stephens*, No. 16CV3234, 2017 WL 4326511, at *5 (E.D.N.Y. Sept. 28, 2017) (citing *Juarez, v. 449 Restaurant, Inc.*, 29 F. Supp. 3d 363, 369 (S.D.N.Y. 2014); *Doucoure*, 554 F. Supp. 2d at 374) ("Conditional certification is regularly granted based upon a complaint and one or two affidavits that collectively demonstrate the requisite nexus."); *see also Bhumithanarn v. 22 Noodle Mkt. Corp.*, No. 14-CV-2625, 2015 WL 4240985, at *3 (S.D.N.Y. July 13, 2015) (finding that the allegations in the complaint and the affidavit of one named plaintiff "met the minimal burden at this preliminary stage of demonstrating that [the plaintiffs] were subject to a common policy or practice and were 'similarly situated' to one another and to potential opt-in plaintiffs").

## B.    Notice of Pendency

Plaintiffs have submitted a proposed Notice of Pendency in the expectation that their motion for conditional certification will be granted.  Defendants, on the other hand, maintain that the motion should be denied, but have nonetheless objected to various provisions of the proposed Notice in the event the motion is granted.  "Neither the [FLSA], nor other courts, have specifically outlined what form court-authorized notice should take nor what provisions the notice should contain."  *Moore*, 276 F.R.D. at 59 (quoting *Fasanelli v. Heartland Brewery, Inc.*, 516 F. Supp. 2d 317, 323 (S.D.N.Y. 2007)) (internal quotation marks omitted).  "The Supreme Court has abstained from reviewing the contents of a proposed notice under § 216(b) noting 'we decline to examine the terms of the notice . . . [.]  We confirm the existence of the trial court's discretion, not the details of its exercise.'"  *Moore*, 276 F.R.D. at 59 (quoting *Hoffmann–La Roche, Inc. v. Sperling*, 493 U.S. 165, 170 (1989)); *Contrera v. Langer*, 278 F. Supp. 3d 702, 721 (S.D.N.Y. 2017) (quoting *Martin v. Sprint/United Mgmt. Co.*, No. 15-5237, 2016 WL 30334, at *15 (S.D.N.Y. Jan. 4, 2016)) ("Upon authorizing the distribution of notice to potential

opt-in plaintiffs, the district court maintains 'broad discretion' over the form and content of the notice.").  "When exercising its broad discretion to craft appropriate notices in individual cases, District Courts consider the overarching policies of the collective suit provisions" and whether the notice provides "accurate and timely notice concerning the pendency of the collective action, so that [an individual receiving the notice] can make an informed decision about whether to participate."  *Fasanelli*, 516 F. Supp. 2d at 323 (quoting *Hoffmann-La Roche, Inc.*, 493 U.S. at 170); *Arciello v. Cty. of Nassau*, No. 16CV3974, 2017 WL 4998074, at *8 (E.D.N.Y. Oct. 30, 2017) (quoting *Hernandez v. Immortal Rise, Inc.*, No. 11 CV 4360, 2012 WL 4369746, at *2 (E.D.N.Y. Sept. 24, 2012)).  With these principles in mind, the Court turns to Plaintiffs' motion.

## IV.  DISCUSSION

### A.  Conditional Certification

Plaintiffs seek, among other relief,

> conditional collective certification with respect to all non-exempt employees (including, but not limited to carpenters, laborers, machinists, helpers, painters, electricians, plumbers, roofers, and other manual workers) employed by Defendants at any time between January 29, 2011 and the present.

Plaintiff's Proposed Order Granting Conditional Certification ("Prop. Order") [DE 35-1]; Am. Compl. ¶ 11; *see* Plaintiff's Memorandum in Support of their Motion for Conditional Certification ("Pls.' Mem.") [DE 37] at 4; Plaintiff's Proposed Notice ("Prop. Notice") [DE 35-1] at 1.  In support of their motion, both of the named Plaintiffs have submitted declarations attesting to certain facts.  Having reviewed the Amended Complaint and the named Plaintiffs' declarations, the Court determines that the named Plaintiffs have made the "modest factual showing" necessary to demonstrate that they and their fellow "carpenters" were similarly situated and "victims of a common policy or plan that violated the law."  *Zhenkai Sun v. Sushi*

*Fussion Express, Inc.*, No. 16-CV-4840, 2018 WL 1168578, at *3 (E.D.N.Y. Mar. 6, 2018)

(quoting *Doucoure*, 554 F. Supp. 2d at 372).   However, as discussed in further detail below, the

Court determines that Plaintiffs have failed to meet their burden as to "all non-exempt

employees" of Defendants.

### 1.      *Plaintiffs' Declarations*

In his declaration, Plaintiff Garriga attests[2] that he and "all non-managerial employees,

including but not limited to carpenters, laborers, machinists, helpers, painters, electricians,

plumbers, roofers, and other workers with similar manual labor construction duties employed by

Defendants . . . were subject to the same wage and hour policies."  Declaration of Heriberto

Garriga ("Garriga Decl.") [DE 38] ¶ 3.  Specifically, Garriga names three co-workers, Enrique,

Josue, and Joel, whom he claims were subject to the same wage and hour policies.  *Id*.  Each of

these individuals was employed as a carpenter.  *Id*.  Garriga further attests that all of Defendants'

non-managerial employees, "including, but not limited to" Enrique, Josue, and Joel, "were paid

in cash at straight time hourly rates for all hours worked, including overtime hours."  *Id*. ¶ 5.

Garriga states that he would "frequently discuss" Defendants' failure to pay overtime with the

named employees and other non-managerial employees, and each payday they would facetiously

ask each other, "[h]ey, did they finally pay you overtime?" -- to which the response would be

"No. Just straight time."  *Id*. ¶ 8.  Moreover, Garriga would frequently discuss Defendants' pay

practices with other employees at lunch and coffee breaks, where "[e]veryone was frustrated

about Defendants' refusal to pay [them] properly."  *Id*.  ¶ 9.  Nor he claims did he or other

---

2   Plaintiff Garriga's declaration is made in Spanish.  Both the Spanish language original
and an English language translation are filed with Plaintiffs' motion.

laborers with whom he worked ever receive any written wage and hour notices or wage statements that accurately reflected the amount of hours they worked.  *Id*. ¶¶ 6, 7.

In his declaration, Plaintiff Ramirez states that during his employment with Defendants, he knew of thirteen other individuals who were similarly employed as carpenters and who performed the same job duties that he performed.  *See* Declaration of Abelino Ramirez ("Ramirez Decl.") [DE 39] ¶ 2.  Some of these other carpenters were named Francisco, Ismael, Joel, Jose, Neftali Jose, and Oscar.  *Id*.  Ramirez also observed ten others who were employed as "helpers" and whom he claims similarly performed manual labor related to construction.  *Id*.  According to Ramirez, these other employees worked the same hours that he worked, which he knows "because everyone stated [*sic*] and stopped work each day at the same time, and everyone would sign in and out with their names and the times they started and stopped work on a list. Everyone worked between forty-eight and fifty-five hours per week."  *Id*. ¶ 3.  Ramirez observed that Defendants paid other employees in the same manner that they paid him, in that they were paid on an hourly basis and were not separately paid overtime for hours worked in excess of 40 per week.  As to how he knows this, Ramirez states as follows:

> I spoke to my coworkers about our pay and saw their checks, specifically Neftali Jose and another worker whose name I cannot remember, to compare our checks and to make sure we were paid for the hours we worked.  Neftali Jose and I also spoke to Mitchell Blonder about how we were not paid overtime premium, and Mr. Blonder told us that we could only [*sic*] quit if we did not like how we were paid.  On paydays, our employer would pay everyone cash, and I would see and discuss how much my coworkers were paid.

*Id*. ¶ 4.

### 2.    *Conditional Certification of a Limited Collective*

Plaintiffs have attempted to meet their modest factual burden primarily through declarations of their own observations and conversations with co-workers.  "When plaintiffs base

their assertions regarding similarly situated employees upon their own observations and

conversations with other employees, courts have required details about these observations and

conversations, such as where and when they occurred and the names of the employees involved."

*Benavides v. Serenity Spa NY Inc.*, 166 F. Supp. 3d 474, 481-82 (S.D.N.Y. 2016); *Taveras v. D*

*& J Real Estate Mgmt. II, LLC*, 324 F.R.D. 39, 45 (S.D.N.Y. 2018) ("Courts in this Circuit often

restrict the scope of a proposed collective or deny conditional certification because of a failure to

identify other co-workers by name and title, provide the specifics of conversations with those

employees, or note details of other employees' working conditions and hours."); *see Sanchez v.*

*JMP Ventures, L.L.C.*, No. 13 CIV. 7264 KBF, 2014 WL 465542, at *2 (S.D.N.Y. Jan. 27,

2014).  In the Court's view, while Plaintiffs' declarations are sufficient to show that they and

their fellow carpenters were likely subject to a common policy or plan that violated the law[3] and

were otherwise similarly situated, their assertions as to other non-exempt employees are sparse

and insufficient to expand the collective to include "all non-exempt employees."

>            **a.**      **Common Policy or Plan**

With respect to the declaration of Plaintiff Ramirez, the only co-workers he is able to

identify, and then only by first name, are all carpenters.  *See* Ramirez Decl. ¶ 2.  Similarly,

Ramirez states that he compared his paycheck with the paycheck of Neftali Jose, a carpenter, and

one other co-worker whose name he cannot remember.  *See id*. ¶ 4.  While Plaintiff Garriga's

---

[3]   The Court observes that little of Defendants' Memorandum in Opposition to Plaintiffs' Motion is spent addressing the issue of conditional certification, as opposed to, for example, the proposed notice and opt-in period, and the memorandum fails to confront the specific observations of the named Plaintiffs presented in their declarations.  *See* Defendants' Memorandum in Opposition ("Defs.' Opp'n.") [DE 31] at 4-5.  Instead, Defendants rely on conclusory assertions that "Plaintiffs have not provided sufficiently detailed support for their allegations and their affidavits are insufficient to satisfy even the 'modest factual showing' required by plaintiffs seeking conditional certification."  *Id.* (quotation omitted).

declaration is slightly more detailed, he remains able to identify carpenters only, and then only

by first name.  *See* Garriga Decl. ¶ 3.  As to non-exempt employees other than carpenters, all

Plaintiff Garriga states is that he would "frequently discuss" the Defendants' illegal pay practices

with them and the three named carpenters, including during each payday.  At coffee and lunch

breaks, he overhead other non-managerial employees "complaining that they were ripped off due

to Defendants' refusal to compensate them" for overtime.  *Id.* ¶¶ 8, 9.  These assertions are

insufficient to expand the collective to include "all non-exempt employees."  *See Alvarez v.*

*Schnipper Restaurants LLC*, No. 16 CIV. 5779, 2017 WL 6375793, at *5 (S.D.N.Y. Dec. 12,

2017) (declining to conditionally certify a collective beyond delivery workers where factual

support was limited to affirmation that plaintiff "often had conversations with three co-workers

who were servers at various [defendants'] locations and that from those conversations, he

'know[s] that all non-managerial tipped employees employed by Defendants were subject to the

same wage and hour policies.'  These unsupported assertions and conclusory allegations are

insufficient to conditionally certify a class"); *cf. Jeong Woo Kim v. 511 E. 5th St., LLC*, 985 F.

Supp. 2d 439, 449 (S.D.N.Y. 2013) (finding factual support of sous chef-plaintiff sufficient to

conditionally certify collective that included other non-managerial kitchen staff where plaintiff

adduced evidence beyond his own personal observations and where plaintiff's assertions were

corroborated by statements of potential opt-ins).

### b.    Similarity of Duties

Plaintiffs' motion for conditional certification as to non-managerial employees other than

carpenters also fails because Plaintiffs have alleged very little as to the duties of other non-

managerial employees with respect to the duties of Plaintiffs and other carpenters.  "A collective

action is only appropriate where the plaintiff[s] make[ ] some showing that the nature of the

work performed by other claimants is at least similar to [their] own." *Romero v. H.B. Auto. Grp., Inc.*, No. 11 CIV. 386, 2012 WL 1514810, at *13 (S.D.N.Y. May 1, 2012) (internal quotation marks omitted).  The most that either Plaintiff states with respect to the duties of other non-managerial employees is that they "similarly performed manual labor related to construction," Ramirez Decl. ¶ 2, and that they had "similar manual labor construction duties."  Garriga Decl. ¶ 3.  Nor does the Amended Complaint contain any allegations as to the duties of other non-managerial employees vis-à-vis carpenters.  In the absence of more, Plaintiffs' assertions are insufficient to satisfy their burden, however low, of showing that carpenters and other potential opt-ins were "similarly situated."  *See Ikikhueme v. CulinArt, Inc.*, No. 13 CIV. 293, 2013 WL 2395020, at *2 (S.D.N.Y. June 3, 2013) (denying conditional certification as a collective action where a plaintiff made "only one statement regarding other Sous Chefs employed by [the defendant] when he declare[d] that it is his '*understanding* that the other Sous Chef employees of Defendants had similar duties and responsibilities and also were not managers'") (emphasis in original).

For the reasons stated here, and to the extent outlined in this Memorandum, Plaintiffs' motion for conditional certification of this action as a collective action is GRANTED, in part, and DENIED, in part.

## B.    The Notice of Pendency

### 1.    Opt-In Notice Period

The FLSA has a two-year statute of limitations, except in the case of willful violations for which the statute of limitations is three years.  *See* 29 U.S.C. § 255(a).  Plaintiffs assert that Defendants' violations of the FLSA were willful.  *See, e.g.*, Am. Compl. ¶¶ 30, 42.  However,

Plaintiffs seek a notice period of six years prior to the filing of the Complaint in this action,[4] because the state law claims over which this Court may exercise supplemental jurisdiction have a six-year limitations period.  *See* Plaintiffs' Memorandum in Reply ("Pls.' Reply") [DE 40] at 8-9; *see also* 28 U.S.C. § 1367.  Defendants argue that a notice period of two years only is warranted and that any notice period should extend back from the Court's decision on the instant motion rather than from the filing of the Complaint.  *See* Defs.' Opp'n. at 5-6.  In the Court's view, Plaintiffs have proffered facts sufficient to support an inference if willfulness.  *See Calderon*, 892 F. Supp. 2d at 462 ("The allegations contained in plaintiffs' Complaint concerning defendants' failure to provide their employees with proper overtime compensation are sufficient at this preliminary stage to warrant authorizing notice for a three-year period.").  Plaintiff Ramirez even attests that he and another employee confronted Defendant Blonder regarding Defendants' failure to pay overtime.  *See* Ramirez Decl. ¶ 4.  Since an inference of willfulness has been sufficiently established, the question then becomes whether a three or six-year notice period is appropriate.

Multiple courts in the Eastern District, including this Court, have held that in some circumstances where a case involves both NYLL and FLSA claims, it promotes judicial economy to send notice of the lawsuit to all potential plaintiffs at the same time even though some individuals may only have timely NYLL claims.  *See D'Arpa v. Runway Towing Corp.,* No. 12-CV-1120, 2012 WL 6138481, at *1 (E.D.N.Y. Dec. 11, 2012); *Lazo v.Queens Health Food Emporium, Inc.,* No. 11-CV-5848, 2012 WL 2357564, at *3 (E.D.N.Y. June 20, 2012);

---

[4]  Plaintiffs' proposed Notice of Collective Action references an opt-in period extending back only to January 29, 2014, or three years, *see* DE 35-1, rather than January 29, 2011, six years, as is referenced in Plaintiffs' Proposed Order, *see id.*, and in their Reply Memorandum. *See* DE 40.

*Moore v. Eagle Sanitation, Inc.*, 276 F.R.D. 54, 59 (E.D.N.Y. 2011); *Rodriguez v. Almighty Cleaning, Inc.*, 784 F. Supp. 2d 114, 132 (E.D.N.Y. 2011); *Schwerdtfeger v. Demarchelier Mgmt, Inc.*, No. 10-CV-7557, 2011 WL 2207517, at *6 (S.D.N.Y. June 6, 2011); *Klimchak v. Cardrona, Inc.,* No. CV-09-4311, 2011 WL 1120463, at *7 (E.D.N.Y. Mar. 24, 2011)*; Cano*, 2009 WL 5710143, at *8. Given the nature of the collective in this case, the Court finds it "prudent and expedient in this case to allow a six-year period to apply, even if some recipients of the notice will have claims that are time-barred under the FLSA. Since there may be a number of employees who have both timely state and FLSA claims . . . it seems logical, efficient and manageable to compel defendants' production of these names only once." *Han v. Sterling Nat'l Mortgage Co., Inc.*, No. 09-CV-5589, 2011 WL 4344235, at *11 n.11 (E.D.N.Y. Sept. 14, 2011); *see D'Arpa*, 2012 WL 613-8481, at *1; *Klimchak*, 2011 WL 1120463, at *7.

With respect to the calculation of the limitations period, courts often begin counting back from the date of the conditional certification order since the statute of limitations on FLSA claims continues to run until a plaintiff consents to join the action. *See* 29 U.S.C. § 256; *Ritz v. Mike Rory Corp.*, No. 12 Civ. 367, 2013 WL 1799974, at *3 (E.D.N.Y. 2013). "However, 'because equitable tolling issues often arise as to individual opt-in plaintiffs, courts frequently permit notice to be keyed to the [ ] period prior to the filing of the complaint, with the understanding that challenges to the timeliness of individual plaintiffs' actions will be entertained at a later date.'" *Gaspar*, 2014 WL 4593944, at *7 (quoting *Trinidad*, 962 F. Supp. 2d at 564 n.14); *see, e.g.*, *Winfield v. Citibank, N.A.*, 843 F. Supp. 2d 397, 410 (S.D.N.Y. 2012); *Guzelgurgenli v. Prime Time Specials Inc.*, 883 F. Supp. 2d 340, 356 (E.D.N.Y. 2012)*; Whitehorn v. Wolfgang's Steakhouse, Inc.*, 767 F. Supp. 2d 445, 451 (S.D.N.Y. 2011). The

Court adopts the latter course here, and will permit notice to be keyed to the six year period prior to the date the Complaint was filed – January 29, 2017.

As explained, the Court has determined that a collective consisting of "all non-exempt employees" is too broad.  Therefore, the collective which Plaintiffs seek to conditionally certify will be modified.   Plaintiffs have proffered evidence as to Defendants' employment practices affecting only manual laborers, including carpenters, machinists, "helpers," painters, electricians, plumbers, and roofers.  *See* Garriga Decl. ¶ 3.  Plaintiffs have not provided any evidence as to non-exempt employees whose work does not primarily involve manual labor or construction-related duties.  Therefore, the Court grants conditional certification as a collective action to opt-in Plaintiffs designated as follows:

> All individuals employed by Blonder Builders Inc. as manual laborers, including carpenters, machinists, helpers, painters, electricians, plumbers, or roofers, since January 29, 2011.

### 2.     *Contact Information for Defendants' Counsel*

Defendants argue that their counsel's name, address, and telephone number should be included in the Notice of Pendency, arguing that inclusion of such information is "routine."  *See* Defs.' Opp'n. at 7-8.  Plaintiffs oppose this request, pointing out that "it is unclear what information the defendant's attorneys would offer a putative party plaintiff who contact them."  Pls.' Reply at 11.  Courts in this Circuit have come down on both sides of such requests.  *Compare Moore*, 276 F.R.D. at 61 (citing *Gjurovich*, 282 F. Supp. 2d at 108 and *Sobczak,* 540 F. Supp. 2d at 367) ("Defendants request that their counsel's name, address, and telephone number be included on the notice.  I find this request to be reasonable, and such information is routinely included in notices of pendency."), *with Iriarte*, 2008 WL 2622929, at *4 (noting that "language directing employees to plaintiff's counsel appears to be standard.  Moreover, limiting the

provision to plaintiff's counsel seems most appropriate under these circumstances, where those deciding to opt in are likely to be represented by plaintiff's counsel, and in any event certainly will not be represented by counsel for the defendant") (internal quotations and citations omitted).

The Court agrees that it is not clear what purpose inclusion of the contact information of Defendants' counsel in the Notice of Pendency would serve, and declines to Order it be included. However, the Court does think that a separate heading on the notice, titled "Right to Retain Other Counsel," would be appropriate. While Plaintiffs' proposed notice mentions that opt-ins need not be represented by Plaintiffs' counsel, this information is buried in a dense paragraph on the second page of the notice. *See* Prop. Notice at 2. Therefore to add clarity, the Court directs that the notice be amended such that the three sentences addressing opt-in plaintiffs' rights to obtain other counsel be removed from their current location and placed under a separate heading reading "Right to Retain Other Counsel." *See Iriarte*, 2008 WL 2622929, at *4 ("[D]efendant's suggestion that an additional heading, 'Right to Retain Other Counsel,' adds clarity and should be included.").

### 3.    *Submission of Opt-in Forms*

Plaintiffs' proposed notice instructs opt-ins to mail their completed form to Plaintiffs' counsel. *See* Prop. Notice at 2. Defendants object to this directive, arguing that "[r]ecent cases in this district have suggested that such a procedure implicitly discourages opt-in plaintiffs from selecting other counsel." Defs.' Opp'n. at 8 (quoting *Lujan v. Cabana Mgmt., Inc.*, No. 10-CV-755, 2011 WL 317984, at *13 (E.D.N.Y. Feb. 1, 2011)). Instead, Defendants seek an Order directing opt-ins to mail their consent forms to the Court. *See* Defs.' Opp'n. at 8. In response, Plaintiffs argue that it would be improper for consent forms to be returned to the Court, since "putative party plaintiffs who complete the included Consent to become a Party Plaintiff form will have already chosen to be represented by the named plaintiffs' attorneys, . . . [and] [i]t

18

would not be appropriate for the Court to intervene in the manner of the communication between a party plaintiff and the named plaintiff's attorney."  Pls.' Reply at 12.

"Courts within this Circuit have split on whether the consent forms should be returned to the Clerk of the Court or to plaintiff's attorney."  *Hotaranu v. Star Nissan Inc*., 16 CV 5320, 2017 WL 1390808, at *6 (E.D.N.Y. Apr. 12, 2017) (quoting *Dilonez*, 35 F. Supp. 3d at 257). *Compare Arciello*, 2017 WL 4998074, at *7 ("Although courts in this Circuit are split on this issue, where the notice states that potential plaintiffs may select their own attorney, as the Proposed Notice does here, there is only a minimal risk that opt-in plaintiffs will be discouraged from seeking their own counsel."), *and Martin*, 2016 WL 30334, at *18 ("The majority of courts [ ] have directed opt-in plaintiffs to mail the consent forms to plaintiffs' counsel."), *and Dilonez*, 35 F. Supp. 3d at 257 ("[I]n light of the budgetary constraints and financial limitations faced by the federal courts, the more practicable and efficient method of opting in is for the consent forms to be sent to plaintiffs' counsel."), *with Velasquez v. Digital Page, Inc*., No. CV 11-3892, 2014 WL 2048425, at *14 (E.D.N.Y. May 19, 2014) ("The common practice in the Eastern District is to have opt-in plaintiffs send their consent forms to the Clerk of the Court rather than to plaintiffs' counsel."), *and Rosario*, 828 F. Supp. 2d at 521 (finding "inappropriate" a requirement to send opt-in forms to plaintiff's counsel because "such a procedure implicitly discourages opt-in plaintiffs from selecting other counsel"), *and Hanming Feng v. Soy Sauce LLC*, No. 15 CV 3058, 2016 WL 1070813, at *6 (E.D.N.Y. Mar. 14, 2016) ("[R]ecent cases in this district have suggested that [mailing opt-in forms to plaintiff's counsel] implicitly discourages opt-in plaintiffs from selecting other counsel.").

Having considered the case law in this Circuit on both sides of the issue and the policy concerns which underlie these decisions, the Court, in its discretion and consistent with its prior

19

decisions, directs opt-in forms be mailed to the Clerk of the Court.  **The Court is also directing the Clerk of the Court to redact the address and telephone number of each opt-in prior to filing the forms on ECF**.  The Clerk's Office will need to retain the unredacted originals in order to provide them to Plaintiffs' counsel.

### 4.      *Defendants' Intent to Decertify*

Defendants contend that the Notice of Pendency should include a provision stating that Defendants' disagree with the assertions raised in the lawsuit, and that they intend to move to decertify the collective action.  *See* Defs.' Opp'n. at 9.  Significantly, Defendants cite no case law in support of their position that inclusion of such information would be appropriate. Plaintiffs oppose this request and point out that the proposed notice already states that Defendants deny Plaintiffs' allegations.  *See* Pls.' Reply at 13.  The Court finds that inclusion of the Defendants' intent to decertify the action is improper.  *See Ritz*, 2013 WL 1799974, at *4 ("Since plaintiff's proposed notice already includes a statement that defendants believe that all tipped service workers 'were paid properly, according to the law,' such an addition is unnecessary . . . .") (internal citation omitted).  Moreover, the Court finds that in light of the remedial purposes of the FLSA, inclusion of Defendants' intent to decertify risks conveying to potential opt-ins a message of futility which could dissuade some from joining the lawsuit.  For these reasons, the Court declines to Order the parties to include Defendants' proposed provision regarding their intent to decertify the action.

However, the Court finds it appropriate that Defendants' litigation position be stated prominently on the first page of the Notice.  The proposed statement of the Defendants' position as set forth in Plaintiffs' proposed "Notice of Collective Action Lawsuit" is inadequate.  That statement appears as the last sentence of the paragraph just above the section on page 1 entitled

"YOUR LEGAL RIGHTS."   The Court directs that this sentence be deleted and that a new

paragraph be inserted which reads as follows:

> The Defendants deny the allegations of the lawsuit and have raised
> various defenses.  The issue of who is right and who is wrong has
> not yet been addressed by the Judge and the Judge has no opinion
> on who is right or wrong.

*See Velasquez v Digital Page, Inc.*, CV 11-3892, 2014 WL 2048425, at *13 (E.D.N.Y. May 19,

2014).

### 5.     *Reference to the NYLL*

Defendants object to the proposed notice's reference to potential opt-in Plaintiffs' rights

under the NYLL.  They argue that "[t]his is an attempt by Plaintiffs to bootstrap their NYLL

claims to the FLSA collective action notice since Plaintiffs have not filed a motion for class

action under NYLL."  Defs.' Opp'n. at 9.  Plaintiffs do not appear to address this argument in

their Reply Memorandum.  The Court does not find reference to the NYLL in the Notice to be

problematic, especially since the Court has established a six-year notice period, consistent with

the limitations period under the NYLL.  Accordingly, the Court will not Order Plaintiffs to

remove reference to the NYLL in the Notice.

### 6.     *Method of Dissemination of the Notice*

In addition to dissemination of the Notice of Pendency by mail, Plaintiffs seek an Order

approving "posting" of the notice and consent forms "in a conspicuous location at each job site

where Covered Employees are working at by Plaintiff's counsel at any time during regular

business hours."  Prop. Order.  Defendants contend that such posting is unwarranted, arguing that

"Plaintiffs have no reason to believe that a direct mailing would be an insufficient method of

providing notice[,] and posting in the workplace can have a negative effect on the work

environment."  Defs.' Opp'n. at 10.  Defendants further argue that posting would "effectively

advertise to Defendants' current customers the contested—and unproven—allegations of Defendants' violations of the law." *Id*.

Courts regularly approve plaintiffs' requests to post notices and consent forms in "non-public areas" where potential collective members are likely to congregate, such as clock-in stations or break rooms. *Trinidad*, 962 F. Supp. 2d at 564 (collecting cases); *Barbato v. Knightsbridge Properties*, No. 14-7043, 2015 WL 5884134, * (E.D.N.Y. Oct. 8, 2015) ("Defendant shall post the Proposed Notice and Consent to Join forms in a non-public common area in each of the Knightsbridge Properties.").  While the several cases cited by Plaintiffs correctly recognize the proposition that posting can be an appropriate and routine way of disseminating notice, none of these cases address the unique circumstances Defendants' work sites present -- specifically, that in addition to being visible to potential opt-ins, posted notices at Defendants' work sites would be visible to Defendants' current customers, thereby risking damage to Defendants' business.  "In selecting the manner of issuing the notice, this court must strike the appropriate balance in ensuring notification to [potential class members] while minimizing disturbance to [Defendant's] business." *Cortes v. New Creators, Inc.*, No. 15 CIV. 5680, 2015 WL 7076009, at *5 (S.D.N.Y. Nov. 12, 2015) (quoting *Hallissey v. Am. Online, Inc.*, No. 99 Civ. 3785, 2008 WL 465112, at *3 (S.D.N.Y. Feb.19, 2008)).  The Court finds this to be the rare case where this balance tips in the Defendants' favor, since they have adequately "explain[ed] how such a posting would be more burdensome in this case." *Bittencourt v. Ferrara Bakery & Cafe Inc.*, 310 F.R.D. 106, 118 (S.D.N.Y. 2015).  Accordingly, the Court directs that the Notice shall not be posted at Defendants' worksites.

### 7.    *Production of Identifying Information*

While Plaintiffs' Proposed Order seeks certain identifying information of potential opt-in

Plaintiffs -- including social security numbers, email addresses, and telephone numbers -- the

production of which Defendants oppose, Plaintiffs' Reply Memorandum proposes to defer

addressing the issue of identifying information until the instant motion is addressed by the Court.

*See* Prop. Order; Pls.' Reply at 14.

Courts within the Second Circuit typically grant this type of request when granting a

motion for conditional certification of an FLSA collective action, and this Court finds that

providing the information is appropriate within the context of this case.  *See Sexton v. Franklin*

*First Fin., Ltd.*, No. 08-CV-04950, 2009 WL 1706535, at *13 (E.D.N.Y. June 16, 2009); *Bifulco*

*v. Mortg. Zone, Inc.*, 262 F.R.D. 209, 216 (E.D.N.Y. 2009); *Hens v. ClientLogic Operating*

*Corp.*, No. 05-CV-381S, 2006 WL 2795620, at *5 (W.D.N.Y. Sept. 26, 2006) (explaining that

the name, last known mailing address, last known telephone number, work location, and dates of

employment are "essential to identifying and notifying potential 'opt-in' plaintiffs, and should be

disclosed"); *Sherrill v. Sutherland Glob. Servs., Inc.*, 487 F. Supp. 2d 344, 350 (W.D.N.Y. 2007)

("I agree that such information is essential to identifying prospective opt-in plaintiffs.");

*Chowdhury v. Duane Reade, Inc.*, No. 06 CIV. 2295, 2007 WL 2873929, at *5 (S.D.N.Y. Oct. 2,

2007) ("When a court certifies a collective action, it may require an employer to disclose the

names and addresses of potential plaintiffs.").  Requiring Defendants to provide the requested

information will not be "unduly burdensome or disruptive to [D]efendant's business operations."

*Sexton,* 2009 WL 1706535, at * 13; *see Bifulco,* 262 F.R.D. at 216 ("In selecting the manner of

issuing the notice, this court must strike the appropriate balance in ensuring notification to the

[opt-in plaintiffs] while minimizing disturbance to [defendant's] business.") (quoting *Hallissey v.*

*Am. Online, Inc.*, No. 99-CIV-3785, 2008 WL 465112, at *3 (S.D.N.Y. Feb. 19, 2008)).

Accordingly, Defendants shall provide the names, last known mailing addresses, last known

telephone numbers, dates of employment and email addresses to the extent Defendants have that

information.  Defendants are not required and shall not provide social security number or dates

of birth.  Defendants shall provide this information to Plaintiffs' counsel within 21 days.

### 8.   *Equitable Tolling*

Pursuant to 29 U.S.C. Section 256(b), the statute of limitations applicable to a plaintiff's

claim continues to run until he or she has filed a written consent with the court to join the

lawsuit.  However, "[a] district court may toll the limitations period to avoid inequitable

circumstances."  *Jackson v. Bloomberg, L.P.*, 298 F.R.D. 152, 170 (S.D.N.Y. 2014) (citing

*Chapman v. ChoiceCare Long Island Term Disability Plan*, 288 F.3d 506, 512 (2d Cir. 2002)).

"When determining whether equitable tolling is applicable, a district court must consider

whether the person seeking application of the equitable tolling doctrine (1) has 'acted with

reasonable diligence during the time period she seeks to have tolled,' and (2) has proved that the

circumstances are so extraordinary that the doctrine should apply."  *Zerilli-Edelglass v. New

York City Transit Authority*, 333 F. 3d 74, 80-81 (2d Cir. 2003) (quoting *Chapman*, 288 F. 3d at

512).

Courts in the Second Circuit "have permitted equitable tolling while the motion for

conditional certification is before the court."  *Fa Ting Wang*, 2015 WL 4603117, at *14 (citing

*Robles*, 2013 WL 6684954, at *13); *McGlone*, 867 F. Supp. 2d at 445 (finding that potential

plaintiffs "whose putative class representatives and their counsel are diligently and timely

pursuing the claims should also not be penalized due to the courts' heavy dockets and

understandable delays in rulings").  Given the length of time that has passed since the instant

motion was filed, and the diligence of Plaintiffs' counsel in pursuing certification, the Court is

granting equitable tolling from the date the motion was filed. *See Chime v. Peak Sec. Plus, Inc.*, 137 F. Supp. 3d 183, 188 (E.D.N.Y. 2015) (citing *Kassman v. KPMG LLP*, 11–CV–3743, 2015 WL 5178400, at *8 (S.D.N.Y. Sept. 4, 2015)).

## V.   CONCLUSION

For the foregoing reasons, Plaintiffs' motion for conditional certification as an FLSA collective action pursuant to Section 216(b) is GRANTED, in part, and DENIED, in part, as set forth in this Memorandum and Order.  The Court directs counsel to engage in a good faith meet-and-confer, and within 21 days of issuance of this Order to submit a revised proposed Notice of Pendency to comply with the directives set forth here.


                                                            **SO ORDERED.**


 Dated: Central Islip, New York
        September 28, 2018


                                                    /s/ A. Kathleen Tomlinson
                                                    A. KATHLEEN TOMLINSON
                                                    U.S. Magistrate Judge